JOSEPH BARON *et al.*, Plaintiffs-Appellants, *v.* CORONET INSURANCE COMPANY, Defendant-Appellee.

First District (3rd Division)    No. 60833

Opinion filed March 23, 1977.

Paulson & Ketchum, of Chicago (Lawrence T. Stanner and William J. Harte, Ltd., of counsel), for appellants.

Haft, Shapiro & Haft, of Chicago (Morris A. Haft and William H. Martay, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The plaintiffs, Joseph and Virginia Baron, appeal from the entry of summary judgment in favor of the defendant, Coronet Insurance Company. Plaintiffs are insured under an automobile liability and uninsured motorist policy. The policy had been issued by defendant's predecessor, but was acknowledged and assumed by defendant. Plaintiffs began this action to recover damages for the alleged failure of the defendant to pay damages sustained by plaintiffs as a result of an accident caused by an uninsured motorist. Plaintiffs charged that this failure was a breach of defendant's obligations under the uninsured motorists coverage provisions of the policy. Plaintiffs on appeal maintain that there existed genuine issues of material fact warranting trial as to whether they had satisfied all requirements of the policy or that the defendant had waived formal compliance with the policy. In granting summary judgment, the trial court considered various pleadings, affidavits, exhibits, previous reports of proceedings, and memoranda furnished by both sides.

This case has a lengthy history going back to July 21, 1963, the date of

plaintiffs' automobile accident with a Mr. Caterino Villereal. On July 24, 1963, defendant acknowledged in writing that it had been notified of the accident. On September 3, 1963, plaintiffs filed a negligence action against Villereal in the circuit court of Lake County. At the same time, plaintiffs' counsel informed defendant that he had learned Villereal had no liability insurance coverage in effect at the time of the accident. Plaintiffs' counsel attached to that letter to defendant a copy of the summons and complaint against Villereal.

On September 23, 1963, defendant received a letter from its own attorney which discussed an attempt by defendant to have an attorney file an appearance for Villereal, the uninsured motorist, so as to defeat their own insureds' claim against him. Referring specifically to the suit of *Baron v. Villereal,* the letter reads in part as follows:

> "I have further instructed Mr. Feldman [an investigator for defendant's attorney] to contact the uninsured third party for authorization to file an appearance and answer in his behalf in the lawsuit filed in Lake County."

On March 24, 1964, plaintiffs' attorney wrote defendant informing it of plaintiffs' desire to settle the matter with defendant rather than to proceed with the lawsuit. The letter recited that if a reasonable settlement could not be reached, plaintiffs would be willing to submit the matter to arbitration as required by the policy. Defendant made no written response to this letter.

According to the testimony of one of the defendant's own employees at a subsequent garnishment hearing, plaintiffs' attorney wrote a number of letters to defendant to which there was no written reply. These letters extended from 1964 to 1966. At the same garnishment hearing, plaintiffs' attorney testified that in 1964 he had been in telephone contact with a Mr. Gerstein, an employee of defendant. Gerstein replied to one of the aforementioned letters by telephone and requested additional time to study the file. Plaintiffs' attorney further testified that after several additional requests for delay by Gerstein, the witness called Gerstein and demanded to know whether defendant was going to arbitrate the claim. Gerstein replied that "we are not going to arbitrate anything."

On January 8, 1965, as part of the stream of correspondence to defendant, plaintiffs' attorney wrote the following letter discussing the possibility of arbitration between the two parties:

> "Because you are not a member of the American Arbitration Association, any demand by your insured for arbitration would impose a $200 cost burden or more, we find it expedient to proceed to verdict in the Lake County Circuit Court pursuant to pleadings already forwarded to you in compliance with policy provisions. If you wish to pay the costs of arbitration and serve notice of your

demand we would honor your demand if made within a reasonable time. In any event we shall notify you of the verdict and amount of judgment against the uninsured motorist, Caterino Villereal, after the case has been tried."

Plaintiffs' counsel subsequently informed defendant that because of its failure to enter into negotiations or arbitration, plaintiffs would pursue the action against Villereal to judgment. On May 10, 1966, judgment for $2,500 was entered against Villereal in favor of each plaintiff. Plaintiffs then filed the aforementioned garnishment action against defendant in Lake County for payment under the uninsured motorist provision of the policy. On November 9, 1967, the trial court ruled in favor of plaintiffs and awarded them $5,000 damages from the Villereal suit. This court, Second District, reversed that judgment. (*Baron v. Villereal* (1968), 100 Ill. App. 2d 366, 241 N.E.2d 227.) The court ruled that garnishment was not a proper remedy whereby plaintiffs could recover in this situation. The court, at page 374, stated that:

"However, we are not adjudicating the question of whether or not the plaintiffs, in a proper action, can recover against Coronet under the facts of this case."

As a result of that decision, plaintiff filed the present action in the circuit court of Cook County. Plaintiffs alleged that they had performed all the conditions of the insurance policy required of them. They asked for damages under the uninsured motorist provision in the amounts of the judgments against Villereal as well as for $1,000 each under section 155 of the Insurance Code (Ill. Rev. Stat. 1967, ch. 73, par. 767) for vexatious refusal to make payment to plaintiffs. Defendant filed a motion for judgment on the pleadings. On August 3, 1971, that motion was denied.

On March 1, 1974, defendant filed its motion for summary judgment which is the subject of the present appeal. This motion, with insignificant exceptions, is identical to the motion for judgment on the pleadings which had been denied. The motion for summary judgment recited that plaintiffs' prosecution of the suit against Villereal was in violation of the policy; that the policy required an arbitration demand which was never given; and that the appellate court's previous decision barred the action as *res judicata*. It also stated that the judgment against Villereal included bodily injury damage as well as property damage, and that only the former was covered by the policy. Attached to the motion were affidavits and other documents.

These exhibits included an affidavit of defendant's claim manager stating that he had held that position from 1963 until the time of the filing of the present suit. To his knowledge, plaintiffs had made no request or demand for arbitration.

Plaintiffs filed a motion to strike defendant's petition for summary

judgment on the ground that in all relevant aspects it was identical to the previously denied petition. After their motion to strike was denied, plaintiffs filed an affidavit executed by plaintiffs' attorney along with several exhibits. The affidavit and exhibits chronicled the aforementioned events and correspondence between the time of the accident and the filing of the present case.

After hearing arguments of counsel, the court granted the motion for summary judgment in favor of defendant. The court noted that it based its ruling on the fact that the policy conditions had not been met.

■■ We must determine whether a genuine issue of material fact exists as to whether plaintiffs had complied with the policy conditions and, if they did not meet those policy requirements, whether defendant had waived compliance with policy requirements. If a genuine issue of material fact exists, summary judgment was improvidently granted by the trial court.

Defendant successfully urged in the trial court and contends in this court that plaintiffs failed to comply with two of the conditions required by the policy for recovery, namely, they failed to obtain the written consent of defendant before proceeding to judgment against Villereal, and they never made a written demand for arbitration.

The failure to obtain written consent from an insurance company, referred to as the permission to sue endorsement, has been litigated in two Illinois cases dealing with the uninsured motorist coverage. (*Levy v. American Auto Insurance Co.* (1961), 31 Ill. App. 2d 157, 175 N.E.2d 607; *Andeen v. Country Mutual Insurance Co.* (1966), 70 Ill. App. 2d 357, 217 N.E.2d 814, *cert. denied*, 385 U.S. 1036, 17 L. Ed. 2d 682, 87 S. Ct. 775.) In both cases the exclusion was held not to bar an action when the insurance company furnished no reason for its refusal to permit the insured to obtain a judgment against an uninsured motorist. *Levy* was decided prior to the passage of a statute validating compulsory arbitration agreements in this state. *Andeen*, which reaffirmed the reasoning of *Levy*, was decided after adoption of that statute. See also *Indiana Insurance Co. v. Noble* (1970), 148 Ind. App. 297, 265 N.E.2d 419.

In the present case, plaintiffs, by affidavits and exhibits, maintain that defendant was promptly notified of the accident and of the suit against the uninsured motorist. Plaintiffs further recited that defendant was asked to negotiate so the suit could be withdrawn, and were notified that plaintiffs planned to proceed to judgment. According to plaintiffs' exhibit, defendant's only response was a clandestine effort to secure counsel for the uninsured motorist against its own insured. At the very least, the matter of not giving permission to sue presented a genuine issue of material fact and was not a matter for summary judgment.

■■ Defendant also claims that plaintiffs did not comply with their

obligation to make a written demand for arbitration. In their affidavit and exhibits, plaintiffs alleged that they did in fact comply with this condition. Additionally, they allege that defendant waived compliance with such a provision through its statements and its conduct. *McMahon v. Coronet Insurance Co.* (1972), 6 Ill. App. 3d 704, 286 N.E.2d 631; *Tarzian v. West Bend Mutual Fire Insurance Co.* (1966), 74 Ill. App. 2d 314, 221 N.E.2d 293.

In the instant case, according to plaintiffs, their attorney broached the subject of arbitration with defendant on at least two occasions. Plaintiff's attorney stated that one of defendant's employees informed him that defendant would not arbitrate. At the garnishment hearing, one of defendant's employees testified that none of the correspondence from plaintiffs' attorney was answered. Again, at the very least, a genuine issue of material fact exists as to whether plaintiffs complied with this condition or in the alternative, whether defendant waived compliance.

■■ We find no merit in defendant's contention that this court's opinion arising out of the garnishment action operates as *res judicata*. The court specifically stated that it was not adjudicating the issue of whether plaintiffs could recover from defendants in a proper action.

Defendant finally maintains that the judgments obtained against Villereal cannot be used to ascertain damages since they were for both bodily injury and property damage, and are not divisible. The uninsured motorist provision in the present policy covers only bodily injury. This is a question for the trial court to determine and is not an issue before this court at the present time.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and this cause is remanded for further proceedings consistent with the holdings of this opinion.

Judgment reversed and cause remanded.

SIMON, P. J., and JIGANTI, J., concur.